UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

CARL W. ADAMS, SR.                          CIVIL ACTION

VERSUS                                      NO. 11-858

ORION GULOTTA, IN HIS OFFICIAL              SECTION "B"
CAPACITY AS CHIEF OF POLICE
DEPARTMENT; BRENT ALLAIN, IN HIS
OFFICIAL CAPACITY AS SHERIFF OF
IBERVILLE PARISH; AND DETECTIVE
ROBBIE JOHNSON

## ORDER AND REASONS

Before the Court are two motions for summary judgment filed by the Defendants in the above captioned case. Detective Robert Johnson and Chief of Police for Plaquemine Police Department, Orion Gulotta, submitted individual motions for summary judgment. (Rec. Doc. Nos. 12 and 14, respectively). Plaintiff, Carl Adams, submitted a Memorandum in Opposition to [All Defendants'] Motions for Summary Judgment. (Rec. Doc. No. 27).

For the reasons pronounced below, **IT IS ORDERED** that: (1) Detective Johnson's Motion for Summary Judgment (Rec. Doc. No. 12) be **DENIED**, and (2) that Orion Gulotta, the Plaquemine Chief of Police's Motion for Summary Judgment (Rec. Doc. No. 14) be **GRANTED**.

Causes of Action and Facts of Case:

This case arises from a series of events beginning with Plaintiff Carl Adams' attempt to file a police report regarding his

1

daughter and culminating in his arrest and detention. The charges filed against the Plaintiff were ultimately dropped. (Rec. Doc. No. 27-1, at 1). Plaintiff has three children with Tonneshia Jackson. (Rec. Doc. No. 27, at 2). The two are not married but have joint custody of the children and Ms. Jackson is the domiciliary parent. (Id.).

On October 29, 2010, Carl Adams went to the home of Cynthia Mitchell (Tonneshia Jackson's mother) in Plaquemine, Louisiana, to pick up his children for his weekend visitation. (Id.). He believed the children to be inappropriately unsupervised and went to the Plaquemine Police Department to report the situation. (Id., at 2-3). Plaintiff returned to the Plaquemine Police Department on November 26, 2010 to fill out paperwork in order to make a complaint against Tonneshia Jackson for leaving the children alone. (Id., at 3). While there, Plaintiff alleges that he was approached by two Plaquemine officers about a separate incident involving his six-year-old daughter. (Id.). With respect to that incident, Plaintiff alleges that he picked up his children on or about November 23, 2010 and his six-year-old daughter complained to Mr. Adams and his mother, Irene Shaw, that it burned when she urinated. (Id.). Plaintiff states that he examined his daughter's vaginal area so that she could show him where she was having pain and Mr. Adams could see that the area was red and swollen. (Id., at 3-4). Plaintiff alleges that he took his daughter to the Our Lady of the Lake Regional Medical Center. (Id.). There she was diagnosed with

2

vaginitis from a urinary tract infection. (Id.). Plaintiff alleges that he was given a prescription and told to follow up with the family physician. On November 24, 2010, Plaintiff took his daughter to Prime Medical where the physician suggested that Carl attempt to get a urine sample for analysis. (Rec. Doc. No. 27-1, at 6).

Defendant Detective Johnson contends that on November 26, 2012, Detective Tammy Eppinette was contacted regarding a child molestation report that the Plaintiff wanted to file and which he stated would be a supplement to a November 19, 2010 report that he had allegedly filed. (Rec. Doc. No. 12-1, at 3). Plaintiff allegedly told Detective Eppinette that, after he picked his daughter up from her mother's residence, his daughter told him that her "tee tee" burned, and Plaintiff looked at his daughter's genital area. (Id.). Detective Eppinette stated that she advised Mr. Adams that he should not be looking at his daughter while he was alone, and that the daughter's mother or another female should be been present. (Id.). Defendant Johnson alleges that the Plaintiff continually repeated to Detective Eppinette the he thought the child had been molested while at the mother's house but that no investigation had been done while at the hospital. (Id.). Johnson also alleges that Plaintiff then reported to Detective Eppinette that he had presented his daughter to a second doctor after the hospital because he thought that his daughter had been molested and may have gonorrhea, and that they had given him a cup to take a urine sample from his daughter and return it to their

3

office. (Id., at 4). It is further alleged that when Detective Eppinette told the plaintiff that she had called the hospital and learned about the incident, and she knew that the children only had minor, normal infractions, the plaintiff completely altered his original allegations and stated that he wanted to file another complaint in reference to the mother not taking the children to the doctor when they were sick. (Id.).

Detective Johnson alleges that on November 29, 2010, the Plaintiff was brought to the PPD for a follow-up investigation and interview regarding the police reports he had filed. Detective Eppinette and Officer Mendoza, the officers who had previously been involved in the complaints and investigations, were present, as was Detective Johnson, who had not previously been involved but was present that day. (Rec. Doc. No. 12-1, at 5). Detective Johnson reviewed the multiple reports filed by the plaintiff and was updated by the other officers. (Id.).

Plaintiff Adams alleges that on November 28, 2010, two deputies of the Iberville Sheriff's Office came to his mother's house to arrest him. (Rec. Doc. No. 27-1, at 6). He further states that the deputies would not tell him why he was being arrested. (Id.). Plaintiff alleges that he was initially taken to Iberville Parish Detention Center but that the jailer at that facility refused to take Mr. Adams without charges. (Id., at 5). The deputies then took Mr. Adams to the Plaquemine Police Station. (Id.). Mr. Adams alleges that while at Plaquemine Police Station,

4

he was interrogated for hours by Detective Robert Johnson. (Id.).
Following the interrogation, Detective Johnson charged Mr. Adams
with the following crimes: (1) indecent behavior with a juvenile in
violation of LSA-R.S. 14:81, (2) filing and maintaining a false
report in violation of LSA-R.S. 14:133, and (3) improper
supervision of minor by parent in violation LSA-R.S. 14:92.2. (Rec.
Doc. No. 12-3, at 5). Plaintiff was arrested and booked into the
Iberville Parish Detention Center on November 29 or 30, 2010. (Rec.
Doc. Nos. 12-1, at 5; 27, at 5). An affidavit was presented to a
judge in the 18th Judicial District in Plaquemine who signed a
warrant for Mr. Adam's arrest on December 3, 2010. (Rec. Doc. No.
12-3, at 27). He was then released on December 7, 2010 and the
charges were dismissed on December 13, 2010. (Rec. Doc. No. 27, at
5). Detective Johnson contends that the charges were levied based
on Plaintiff's statements during questioning and police reports
filed by Plaintiff. (Rec. Doc. No. 12-1, at 5).


**Law and Analysis**


**A. Summary Judgment Standard**

   Summary judgment is proper if the pleadings, depositions,
interrogatory answers, and admissions, together with any
affidavits, show that there is no genuine issue as to any material
fact and that the moving party is entitled to judgment as a matter

5

of law.  Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).  A genuine issue exists if the evidence would allow a reasonable jury to return a verdict for the nonmovant.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, (1986).  Although the Court must consider the evidence with all reasonable inferences in the light most favorable to the nonmoving party, the nonmovant must produce specific facts to demonstrate that a genuine issue exists for trial.  *Webb v. Cardiothoracic Surgery Assocs. of N. Texas*, 139 F.3d 532, 536 (5th Cir. 1998). The nonmovant must go beyond the pleadings and use affidavits, depositions, interrogatory responses, admissions, or other evidence to establish a genuine issue.  *Id*.  Accordingly, conclusory rebuttals of the pleadings are insufficient to avoid summary judgment.  *Travelers Ins. Co. v. Liljeberg Enter., Inc*. 7 F.3d 1203, 1207 (5th Cir. 1993).


**B. 42 U.S.C. § 1983 Claims Against Defendant Detective Johnson**

42 U.S.C. § 1983 states that:

> Every person who, under color of any statute,
> ordinance, regulation, custom, or usage, of any
> State...subjects, or causes to be subjected, any
> citizen of the United States or
> other person within the jurisdiction thereof to the
> deprivation of any rights, privileges, or immunities
> secured by the Constitution and laws, shall be liable
> to the party injured in an action at law, suit in
> equity, or other proper proceeding for redress.

"The first inquiry in any § 1983 suit...is whether the

plaintiff has been deprived of a right 'secured by the Constitution and laws.'" *Hand v. Gary*, 838 F.2d 1420, 1424 (5th Cir. 1988)(citing *Baker v. McCollan*, 443 U.S. 137, 140 (1979)). The Fifth Circuit has found that claims of false arrest and false imprisonment implicate the guarantees of the Fourth and Fourteenth Amendments when the individual complains of an arrest, detention, and prosecution without probable cause. *Thomas v. Kippermann*, 846 F.2d 1009, 1011 (5th Cir. 1988); *see also Sander v. English*, 950 F.2d 1152, 1159 (5th Cir. 1992)(recognizing a cause of action under §1983 for false arrest). In this case, Plaintiff has alleged that he was falsely arrested - thus, implicating the fourth and fourteenth amendments.

Claims of false arrest will fail when it can be demonstrated that there was probable cause for arrest. *Wells v. Bonner*, 45 F.3d 90, 95 (5th Cir. 1995). Defendant Johnson argues that because a warrant was issued for the arrest of Carl Adams after the arrest actually occurred, the arrest was valid. (Rec. Doc. No. 12-1, at 11). Johnson cites to *Smith v. Gonzales*, 670 F.2d 522, 526 (5th Cir. 1982), for this proposition. (Rec. Doc. No. 12-1, at 11). However, in *Smith*, the Court was dealing with a warrant that was issued prior to an arrest. *Smith*, 670 F.2d, at 525. In this case, the Plaintiff was arrested on November 29, 2010 and the warrant was not signed until December 3, 2010. (Rec. Doc. No. 12-3, at 27). Louisiana Courts require that an arrest made without a warrant,

7

even if a warrant is subsequently issued, must be based on probable cause. *See State v. Pittman*, 80-K-2400, p.1 (La. 4/6/81); 397 So.2d 1297, 1298(where a warrant was issued after an arrest had taken place, arrest would only be considered valid upon a showing of probable cause); *see also State v. Bourgeois*, 66656, p.5 (La. 9/1/80); 388 So.2d 359, 363. Thus, despite the delayed issuance of a warrant for Carl Adam's arrest, this Court must still engage in a probable cause analysis.

Probable cause exists "when the totality of the facts and circumstances within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense." *Glenn v. City of Tyler,* 242 F.3d 307, 313 (5th Cir. 2001) (internal quotation and citation omitted), *see also United States v. Watson,* 273 F.3d 599, 602 (5th Cir. 2001) (explaining that probable cause's "fair probability" requires more than a bare suspicion but less than a preponderance of evidence).

However, law enforcement officials "who reasonably but *mistakenly* conclude that probable cause is present are entitled to immunity." *Mendenhall v. Riser,* 213 F.3d 226, 230 (5th Cir.2000) (emphasis added) (internal quotation and citation omitted); *see also Anderson v. Creighton,* 483 U.S. 635, 641 (1987) ("[I]t is inevitable that law enforcement officials will in some cases reasonably but mistakenly conclude that probable

8

cause is present, and we have indicated that in such cases those officials-like other officials who act in ways they reasonably believe to be lawful-should not be held personally liable.").

Mr. Adams was arrested based on Detective Johnson's belief that Plaintiff violated three Louisiana statutes. (Rec. Doc. No. 12-3, at 21). If there was probable cause for arrest based on any of the three violations, then the arrest was valid. *See Wells v. Bonner*, 45 F.3d, at 95. The Court finds that there was not probable cause as to the first two charges. As to the third charge, Filing False Public Records, the Court finds that there exists a genuine issue of material fact as to whether Detective Johnson could have reasonably believed that probable cause existed to arrest Mr. Adams based on a violation of this statute.

(A) Improper Supervision of a Minor

LSA-R.S. 14:92.2 states that:

(1) Through criminal negligence, the permitting of the minor to associate with a person known by the parent or custodian:
    (a) To be a member of a known criminal street gang as defined in R.S. 15:1404(A).
    (b) To have been convicted of a felony offense.
    (c) To be a known user or distributor of drugs in violation of the Uniform Controlled Dangerous Substances Law.
    (d) To be a person who possesses or has access to an illegal firearm, weapon, or explosive.

(2) Through criminal negligence, the permitting of the minor:
    (a) To enter premises known by the parent or custodian to be a place where sexually indecent activities or prostitution is practiced.

9

(b) To violate a local or municipal curfew ordinance.
(c) To habitually be absent or tardy from school pursuant to the provisions of R.S. 17:233 without valid excuse.
(d) To enter the premises known by the parent or legal custodian as a place of illegal drug use or distribution activity.
(e) To enter the premises known by the parent or legal custodian as a place of underage drinking or gambling.
(f) To enter the premises known by the parent or legal custodian as a place which stores or has a person present who possesses an illegal firearm, weapon, or explosive.

In *Thomas v. Green*, No. 04-0531, 2007 WL 1467236, at *4 (W.D.La. May 18, 2007), the district court held that an arresting Detective did have probable cause to arrest under LSA-R.S. 14:92.2 because there was evidence that a mother, having care and control of the minor, permitted the minor to associate with a person she knew to have been convicted of a felony offense. In the case at bar, Defendant Johnson has not articulated any facts that would amount to probable cause for this particular charge. Defendant simply repeatedly reiterates that the Plaintiff mentioned examining his daughter's vaginal area in connection with the child's complaints of pain in that area. Plaintiff's alleged statement does not implicate the statute at issue and Defendant has not specified which provision of the statute he believed was violated. Therefore, probable cause did not exist to arrest the plaintiff on the basis of improper supervision.

(B) <u>Indecent Behavior with a Minor</u>

LSA-R.S. § 14:81 states:

A. Indecent behavior with juveniles is the commission of any of the following acts with the intention of arousing or gratifying the sexual desires of either person:

> (1) Any lewd or lascivious act upon the person or in the presence of any child under the age of seventeen, where there is an age difference of greater than two years between the two persons...or

> (2) The transmission, delivery or utterance of any textual, visual, written, or oral communication depicting lewd or lascivious conduct, text, words, or images to any person reasonably believed to be under the age of seventeen and reasonably believed to be at least two years younger than the offender.

"A lewd or lascivious act is one which tends to excite lust and to deprave the morals with respect to sexual relations and which is obscene, indecent and related to sexual impurity or incontinence carried on in a wanton manner." *State v. Stec.*, 99-633, p. 6 (La. App. 5 Cir. 11/30/99); 749 So.2d 784, 787. In *State v. Lirette*, 11-1167, p. 14 (La.App. 5 Cir. 6/28/12); 102 So.3d 801, 811-12 and in *State ex rel. W.B.*, 08-1458, p.3 (La.App. 4 Cir. 4/22/09); 11 So. 3d 60, 62, the Louisiana Courts found that the defendant had committed a lewd act where the state had testimony from the alleged victim of said acts. In this case, the only evidence that Defendant Johnson uses to support his contention that probable cause existed to arrest the Plaintiff

11

for indecent behavior with a minor is, again, that Plaintiff stated that he looked at his daughter's genital area after she alerted him to having pain in that area. This statement is insufficient to implicate the statute. Furthermore, the child stated that she was not touched inappropriately. (Rec. Doc. No. 12-3, at 18). If we arrest parents who investigate children's complaints of feeling unwell, we may condemn children to neglect. These facts do not support a finding of probable cause for arrest under this statute.

    (C) <u>Filing of Maintaining False Public Records</u>

LSA-R.S. 14:133 states that:

the filing or depositing for record in any public office or with any public official, or the maintaining as required by law, regulation, or rule, with knowledge of its falsity, of any of the following:

    (1) Any forged document.

    (2) Any wrongfully altered document.

    (3) Any document containing a false statement or false representation of a material fact.

In *U.S. v. Buswell*, No. 11-198, 2013 WL 210899, at *2, (W.D.La. Jan. 18, 2013), the Court concluded that there was probable cause to believe that the defendant had violated 14:133 where the defendant had filed a police report alleging that two people had yelled and cursed at him and that at least one had battered him and where there was video surveillance conclusively disproving the allegations. In this case, Defendants have not

12

filed evidence that demonstrates that Plaintiff filed a false report. The Defendants have merely demonstrated that there was some confusion as to what complaint Plaintiff was attempting to file. (See Rec. Doc. No. 12-3, at 7, 13-19). Thus, there remains a genuine issue of material fact as to whether there was probable cause to arrest Plaintiff under this statute.

**C. Qualified Immunity**

An officer is entitled to qualified immunity if it would not be clear to a reasonable officer that his conduct was unlawful in the situation he confronted. *Pearson v. Callahan*, 555 U.S. 223, 227 (2009); *Anderson v. Creighton*, 483 U.S. 635, 639 (1987). "If, upon viewing the evidence in the light most favorable to the [plaintiff], reasonable public officials could differ on the lawfulness of the defendant's actions, the defendant is entitled to qualified immunity." *Southard v. Tex. Bd. of Criminal Justice,* 114 F.3d 539, 550 (5th Cir.1997). This inquiry is an objective one, not dependant on the particular officer's subjective beliefs. *Anderson,* 483 U.S., at 635.

Defendant Johnson is not entitled to qualified immunity with respect to the charges of Improper Supervision of a Minor and Indecent Behavior with a Minor which he levied against Plaintiff Adams. As discussed earlier, there was no evidence to support a belief that the plaintiff had violated these two statutes and caselaw supports the conclusion that a reasonable

officer would not have arrested the Plaintiff under those circumstances. With respect to whether the Defendant is entitled to qualified immunity for his arrest of the Plaintiff based on the filing of a false public record charge, the parties have differing stories as to what Plaintiff said to various police officers and the evidence presented is not conclusive. (*See e.g.*, Rec. Doc. Nos. 12-3, at 7, 16; 27, at 3-7). Thus, there remains a genuine issue of material fact on this point.

**D. Vicarious Liability under § 1983 and Respondeat Superior Claims against the Chief of Police for the Plaquemine Police Department**

Plaintiff has stated that he is not claiming that the Chief was responsible, under a theory of *respondeat superior*, for his false arrest. (Rec. Doc. No. 27, at 11). However, Plaintiff does assert that the officers who perpetrated the false arrest were inadequately trained or supervised on what constituted a punishable offense. (Id).

For a supervisor to be liable for failure to train, "the focus must be on the adequacy of the training program in relation to the tasks the particular officers must perform." *City of Canton v. Harris,* 489 U.S. 378, 390-91 (1989). In this inquiry, mere proof that the injury could have been prevented if the officer had received better or additional training cannot, without more, support liability. *Id.* To establish § 1983 liability against supervisors, the plaintiff must show that: (1)

14

the police chief failed to supervise or train the officer; (2) a causal connection existed between the failure to supervise or train and the violation of the plaintiff's rights; and (3) the failure to supervise or train amounted to deliberate indifference to the plaintiff's constitutional rights. *Burge v. St. Tammany Parish,* 336 F.3d 363, 370 (5th Cir. 2003).

Plaintiff does not offer any evidence in support of his contention that the Chief of Police failed to adequately train his personnel other than the allegations he makes based on his own experience with Detective Johnson. This is insufficient to establish a genuine issue of material fact as to whether the Detective's actions were the result of inadequate training on the part of the Chief of Police.

**E. Conclusion**

Thus, for the reasons articulated above, **IT IS ORDERED** that: (1) Detective Johnson's Motion for Summary Judgment (Rec. Doc. No. 12) be **DENIED**, and (2) that the Plaquemine Chief of Police's Motion for Summary Judgment (Rec. Doc. No. 14) be **GRANTED**.

New Orleans, Louisiana, this 7th day of March, 2013.

_____

UNITED STATES DISTRICT JUDGE